UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

THEODORE CHANDLER (D-1),

    Defendant.
                                    /

Case No. 15-20246

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING GOVERNMENT'S REQUEST
TO SENTENCE DEFENDANT BASED ON CROSS-REFERENCE
TO FIRST-DEGREE MURDER GUIDELINE**

**I.    BACKGROUND**

On November 8, 2016, Defendant Theodore Chandler pled guilty to conspiracy to distribute cocaine (Count 1) and conspiracy to launder monetary instruments (Count 2). The Government now seeks to enhance Defendant's sentence for Count 1 based on a cross-reference to the first-degree murder Guideline, U.S.S.G. § 2A1.1, for Defendant's alleged role in the murder of Dynasty Myles — a crime for which Defendant has been neither charged nor convicted. The Court held a sentencing hearing and heard testimony regarding the murder on October 5 and 23, 2017.

Many courts, including courts in the Sixth Circuit, allow sentencing enhancements based upon unconvicted, or even acquitted, conduct. *See, e.g.*, *United States v. White*, 551 F.3d 381, 382 (6th Cir. 2008) (en banc). The practice has survived in federal courts despite a variety of constitutional challenges, and despite the Supreme Court's pronouncement that "[a]ny fact (other than a prior conviction) which is necessary to support

a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *United States v. Booker*, 543 U.S. 220, 244 (2005) (Stevens, J.).

While sentencing based upon unconvicted conduct is broadly permissible, in this case, the Court will DENY the Government's requested enhancement for the reasons discussed below. It is questionable whether the Government proved by a preponderance of the evidence that Defendant is guilty of first-degree murder. However, even if the Court were to find that the Government did prove by a preponderance of the evidence that Defendant is guilty of first-degree murder, the requested enhancement is not appropriate because the murder is unrelated to the count of conviction. Courts use unconvicted conduct to contextualize and assess the severity of the offense of conviction. However, the Sixth Circuit vacates sentencing based on facts unrelated to the offense of conviction. *See, e.g.*, *United States v. Cross*, 121 F.3d 234, 238-39 (6th Cir. 1997). The reason for this is clear: To allow sentencing enhancements in such situations would enable the Government to obtain punishment for any number of unrelated crimes, based upon a bench trial rather than a jury trial, and effectively allow for an end-run around the Sixth Amendment right to a jury trial.

## II. ANALYSIS

### A. Sentencing and the Guidelines

Today, as has been true historically, once a federal court has convicted a defendant of one crime, that conviction allows the court to sentence him for any number of other offenses that were never charged, or that were charged but resulted in acquittal. Prior to the 1980s, this practice occurred in trial courts across the country with little scrutiny, and

2

there was no appellate review to regulate the outcomes. However, with the arrival of the U.S. Sentencing Guidelines in the 1980s, it became far more obvious that an individual convicted of one offense might face a sentence enhanced by a separate offense, and that the enhancement could increase the individual's sentence by a significant amount. *See* Gerald Leonard & Christine Dieter, *Punishment Without Conviction: Controlling the Use of Unconvicted Conduct in Federal Sentencing*, 17 BERKELEY J. CRIM. L. 260, 261 (2012).

Beginning in the 1990s, several constitutional legal challenges were brought against the practice of sentencing based on unconvicted or acquitted conduct, both in federal and state courts. These challenges were based on the Double Jeopardy and Due Process clauses of the Fifth Amendment, as well as the Sixth Amendment right to a jury trial. The Supreme Court heard a number of these constitutional challenges, and a brief overview of the case law follows.

In 1997, the Supreme Court ruled for the first time in *United States v. Watts*, 519 U.S. 148 (1997), that the Double Jeopardy Clause of the Fifth Amendment does not bar a sentencing court from considering conduct of which the defendant has been acquitted, so long as that conduct has been proved by a preponderance of the evidence. Three years later, the Court limited the effect of judicial fact-finding at sentencing in *Apprendi v. New Jersey*, which held that the Sixth Amendment requires that any facts that increase a statutory maximum penalty be considered elements of the offense (regardless of how they are denominated in a statute), and be submitted to a jury and proved beyond a reasonable doubt, or be admitted by the defendant. 530 U.S. 466, 490 (2000).

The Supreme Court later applied *Apprendi* to the Sentencing Guidelines in *United States v. Booker*, 543 U.S. 220 (2005), a case that resulted in two majority opinions.[1] The first majority opinion — known as the "constitutional holding"— held that since the Guidelines were mandatory, judge-found facts used to enhance sentences effectively made each "sentencing factor" an element of an offense, which in light of *Apprendi*, had to be found by a jury or admitted by the defendant. *Id.* at 244 (Stevens, J.). Judge-found facts under the mandatory Guidelines, in other words, violated the Sixth Amendment.[2] The second majority opinion — known as the "remedial holding"— held that since the Guidelines violated the Sixth Amendment due to their mandatory nature, the Guidelines would thereafter be considered merely "advisory." *Id.* at 245 (Breyer, J.).

Most courts went on to interpret *Booker*'s "remedial holding" as entirely mooting the constitutional problems identified in the "constitutional holding." According to these courts, since the Guidelines were no longer mandatory, judge-found facts did not run afoul of the Fifth or Sixth Amendments so long as they satisfied a preponderance of the evidence standard. *See, e.g.*, *White*, 551 F.3d at 383-85 (finding no Sixth Amendment violation where the sentence enhancement based on acquitted conduct satisfied the preponderance of the evidence standard — relying on *Watts*, which remained good law post *Booker*);

---

[1] Justice Ginsburg sided with both otherwise opposed factions.

[2] According to Justice Thomas (who concurred with the "constitutional holding," but dissented from the "remedial holding"), the Court's holding in *Booker* also corrected the U.S. Sentencing Commission's "mistaken belief" that a preponderance of the evidence standard is appropriate to meet due process requirements: "The Fifth Amendment requires proof beyond a reasonable doubt, not by a preponderance of the evidence, of any fact that increases the sentence beyond what could have been lawfully imposed on the basis of facts found by the jury or admitted by the defendant." *Id.* at 319 n.6 (Thomas, J., concurring in part, dissenting in part).

4

*United States v. Fisher*, 502 F.3d 293, 305-06 (3d Cir. 2007); *United States v. Villareal-Amarillas*, 562 F.3d 892, 897-98 (8th Cir. 2009); *see also United States v. Staten*, 466 F.3d 708, 720 (9th Cir. 2006) (applying higher "clear and convincing evidence" standard where a sentencing factor had an extremely disproportionate effect on the ultimate sentence, but noting that the preponderance of the evidence standard remains the general baseline to resolve factual disputes at sentencing post *Booker*).

Courts' willingness to dispense with *Booker*'s "constitutional holding" and return to *Watts* (and even pre-Guidelines sentencing case law) is based on what some deem a fiction, i.e., that the Guidelines are now "merely advisory," just one of the many factors that judges take into account when sentencing. In reality — and as various jurists have conceded openly — the Guidelines remain very important.[3] Nevertheless, with respect to judicial fact-finding at sentencing, federal courts are, more or less, back to where they were pre *Booker*:

> [T]he bottom line, at least as a descriptive matter, is that the Guidelines determine the final sentence in most cases. And notwithstanding the *Booker* constitutional opinion, many key

---

[3]Recognizing the continuing importance of the Guidelines, some courts have refused to adopt the view that *Booker*'s constitutional holding is now irrelevant. As Judge Nancy Gertner of the District of Massachusetts — a prolific commentator on federal sentencing — has explained,

> [w]e cannot say that facts found by the judge are only advisory, that as a result, few procedural protections are necessary and also say that the Guidelines are critically important. If the Guidelines continue to be important, if facts the Guidelines make significant continue to be extremely relevant, then Due Process requires procedural safeguards and a heightened standard of proof, namely, proof beyond a reasonable doubt.

*United States v. Pimental*, 367 F. Supp. 2d 143, 154 (D. Mass. 2005).

5

> facts used to calculate the sentence are still being determined by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt. The oddity of all this is perhaps best highlighted by the fact that courts are still using *acquitted* conduct to increase sentences beyond what the defendant otherwise could have received — notwithstanding that five Justices in the *Booker* constitutional opinion stated that the Constitution requires that facts used to increase a sentence beyond what the defendant otherwise could have received be proved *to a jury beyond a reasonable doubt*. In short, we appear to be back almost where we were pre-*Booker*.

*United States v. Henry*, 472 F.3d 910, 919-20 (D.C. Cir. 2007) (Kavanaugh, J., concurring) (emphasis in original).

### B. Limitations on Judicial Fact-Finding at Sentencing: The Relatedness Principle

While judicial fact-finding at sentencing remains widely accepted post *Booker*, limitations on the practice should — and do — exist. Most significant is the requirement that federal sentences punish defendants only for *convicted offenses* (not for unrelated, unconvicted conduct), and that facts found by the sentencing judge be used only insofar as they contextualize the offense of conviction. This limitation — referred to as the "relatedness principle"— has been explicitly endorsed as a rule by the Tenth Circuit and operates *sub silentio* in most courts.

The relatedness principle emanates from, among other sources, the Sentencing Reform Act of 1984 ("SRA") and the Sentencing Guidelines themselves. The language of the SRA makes clear that sentences under federal law should reflect the nature and seriousness of the crime of conviction, not unrelated conduct. Specifically, the statute instructs sentencing courts to consider "the nature and circumstances *of the offense* . . . ." 18 U.S.C. § 3553(a)(1) (emphasis added). It also states that a sentence should be

6

sufficient, but no greater than necessary, "to reflect the seriousness *of the offense* . . . ." *Id.* § 3553(a)(2)(A) (emphasis added).

The Sentencing Guidelines, which are administrative rules promulgated to carry out the SRA, likewise tether sentencing to the nature and seriousness of the crime of conviction, even where unconvicted conduct may be considered. According to the "relevant conduct" Guideline — a cornerstone of the Guidelines — offense levels and cross-references must be determined by examining:

> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were--
>
> (i) within the scope of the jointly undertaken criminal activity,
>
> (ii) in furtherance of that criminal activity, and
>
> (iii) reasonably foreseeable in connection with that criminal activity;
>
> *that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense*; [and]
>
> . . .
>
> (3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions . . . .

U.S.S.G. § 1B1.3 (emphasis added).

The relatedness principle is also firmly rooted in the Constitution. On several occasions, the Supreme Court has held that, in order to avoid Double Jeopardy concerns, acquitted conduct may be considered at sentencing only in so far as it contextualizes the offense of conviction—not to punish for the acquitted conduct. *Watts* is instructive. In that case, the defendant was tried for possession of cocaine base with intent to distribute, as well as gun possession in connection with a drug offense. 519 U.S. at 149-50. A jury convicted Watts of drug possession, but acquitted him on the gun charge. *Id.* Still, at sentencing, the judge found by a preponderance of the evidence that Watts had possessed a gun in connection with his drug offense, and used this judicially-determined fact to enhance Watts's sentence under the Guidelines. *Id.* at 150. The Ninth Circuit vacated the sentence, holding that the judge could not find facts, even by a preponderance of the evidence, of which the defendant had been acquitted. *Id.* The Supreme Court reversed, finding that no Double Jeopardy concern existed because the sentence was not punishment for the acquitted gun possession charge, but only for the drug offense. As the Court explained, "sentencing enhancements do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence *because of the manner in which he committed the crime of conviction.*" *Id.* at 154 (emphasis added) (citations omitted).

*Witte v. United States*, 515 U.S. 389 (1995), a case the Supreme Court relied upon heavily in *Watts*, likewise employed the relatedness principle to reject a defendant's Double Jeopardy challenge to his sentence. *Witte* involved a defendant convicted of attempting to possess marijuana with intent to distribute. *Id.* at 393-94. The sentencing judge applied an enhancement based upon a finding that Witte had attempted to import cocaine a year

earlier, and that this attempt was part of the same criminal conspiracy. *Id.* at 394. Subsequently, the cocaine incident formed the basis of a separate indictment and, in that case, Witte argued that charging him based upon conduct already considered as "relevant conduct" at the earlier sentencing violated his rights under the Double Jeopardy Clause. *Id.* at 394-95. The Supreme Court disagreed, finding that Witte's first sentence punished him solely for his conviction for attempting to possess marijuana, not for conspiring and attempting to import cocaine. *Id.* at 396. According to the Court, the attempt to import cocaine merely contextualized Witte's conviction for attempting to possess marijuana:

> To the extent that the Guidelines aggravate punishment for related conduct outside the elements of the crime on the theory that such conduct bears on the "character of the offense," the offender is still punished only for the fact that the *present* offense was carried out in a manner that warrants increased punishment, not for a *different* offense (which that related conduct may or may not constitute).

*Id.* at 402-03 (emphasis in original).

The Supreme Court has also articulated the relatedness principle as flowing from the Sixth Amendment right to a jury trial. The *Apprendi* decision struck down a New Jersey hate-crime statute that authorized a 20-year sentence, despite the usual 10-year maximum, if the judge found the crime to have been committed with the purpose to intimidate because of race, color, gender, handicap, religion, sexual orientation, or ethnicity. In doing so, the Court emphasized its concern for protecting the constitutional power of the jury to find those facts essential to punishment. *Apprendi*, 530 U.S. at 490. Later, in *Blakely v. Washington*, 542 U.S. 296, 304 (2004), the Court applied the rule expressed in *Apprendi* and held that "[w]hen a judge inflicts punishment that the jury's verdict alone does not

9

allow, the jury has not found all the facts which the law makes essential to punishment, and the judge exceeds his proper authority." (quotations and citation omitted). Addressing critics of the *Apprendi* decision, Justice Scalia, who authored the majority decision in *Blakely*, explained that their logic would mean "that a judge could sentence a man for committing murder even if the jury convicted him only of illegally possessing the firearm used to commit it—or of making an illegal lane change while fleeing the death scene." *Id.* at 306. He insisted that "[n]ot even *Apprendi*'s critics would advocate this absurd result." *Id.* "The jury," he continued, "could not function as circuitbreaker in the State's machinery of justice if it were relegated to making a determination that the defendant at some point did something wrong, a mere preliminary to a judicial inquiry into the facts of the crime the State *actually* seeks to punish." *Id.* at 306-07 (emphasis in original).

While the Supreme Court has strongly suggested that the Sixth Amendment must include some version of the relatedness principle, the only court to explicitly endorse the rule is the Tenth Circuit. In *United States v. Allen*, 488 F.3d 1244 (10th Cir. 2007), the Tenth Circuit squarely took on the question of whether sentencing may take into account facts that are wholly unrelated to the offense of conviction. There, police had obtained information that Allen was contemplating the rape and murder of young girls; however, an ongoing FBI investigation had not yet revealed nefarious activity. *Id.* at 1246-48. After weeks of investigation and surveillance, the FBI shifted the focus of its investigation to Allen's suspected illicit narcotics activity, and an undercover agent set up a drug transaction. *Id.* at 1248. Allen ultimately pled guilty to one count of possession of methamphetamine with intent to distribute. *Id.* at 1248-29. Following the conviction,

10

prosecutors sought a sentence enhancement on the ground that Allen represented a serious danger to young girls. *Id.* at 1249-50. The Government characterized the drug prosecution as the fastest way to take Allen, a dangerous man, off the streets. *Id.* at 1249. The trial judge sentenced Allen to 360 months of imprisonment—the sentence he would have received had he been convicted by a jury of solicitation of murder or attempted sexual abuse and abduction of a child, and more than two and a half times the top end of the recommended range under the Sentencing Guidelines. *Id.* at 1245.

The Tenth Circuit vacated the sentence, relying on what it called the "relatedness principle", i.e., the rule that sentencing facts must be adequately related to the offense of conviction. *Id.* at 1255. According to the court, this fundamental principle flowed as a matter of proper interpretation of the SRA and the Guidelines:

> The relatedness principle is fundamental because of our commitment to sentencing based on the seriousness of the *actual offense* proven or admitted. *See* 18 U.S.C. § 3553(a)(1) ("the nature and circumstances *of the offense*") (emphasis added); *id.* § 3553(a)(2)(A) ("the need for the sentence imposed . . . to reflect the seriousness *of the offense* . . .") (emphasis added); William W. Wilkins, Jr. & John R. Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines*, 41 S.C. L. REV. 495, 497-99 (1990).

*Id.* (emphasis in original). The *Allen* court found support for the relatedness principle in the Sixth Amendment as well:

> This is not unrelated to the Sixth Amendment principles underlying *Booker* . . . . When a sentencing court considers conduct related to the offense of conviction, the objective is to determine the seriousness of the very crime found by the jury or admitted by the defendant. If the considered conduct has nothing to do with the offense of conviction, the court is effectively sentencing a defendant for a crime that was never proved to the jury, or admitted by the defendant. To allow this

11

> would empower the government to obtain punishment for any number of unrelated crimes, based on bench trial rather than jury trial. The relatedness principle thus keeps the system from straying too far beyond the Sixth Amendment line.

*Id.*

A review of the case law indicates that a rule requiring sentencing facts to be sufficiently related to the offense of conviction operates in most courts. In *United States v. Cross*, 121 F.3d 234, 239 (6th Cir. 1997), for example, the Sixth Circuit found that the defendant's participation in the torture of a victim suspected of stealing cocaine was not relevant conduct to be considered in sentencing the defendant for the offense of distribution of cocaine. In refusing to apply a sentence enhancement based on physical restraint of a victim, the court noted that the alleged torture had occurred several weeks after the distribution offense and was not intended to conceal the earlier offense. *Id. See also United States v. Ortiz*, 431 F.3d 1035, 1041-43 (7th Cir. 2005) (finding that "the additional cocaine that the district court attributed to Ortiz was not part of the same common scheme or plan as the [drug distribution] crime[s] to which Ortiz pled guilty, and [was] thus not relevant conduct"); *United States v. Ellis*, 419 F.3d 1189, 1192-93 (11th Cir. 2005) (finding that the defendant could not be subject to an upward departure for witness tampering and suspected civil rights violations where he pled guilty to making a false statement to the FBI because such a departure "would do nothing to reflect the 'actual seriousness' of the offense to which he pled guilty; rather, it would reflect the seriousness of unproven allegations that, at least for sentencing purposes, [we]re not meaningfully related to his false statement to the FBI"); *United States v. Newsom*, 508 F.3d 731, 734-35 (5th Cir. 2007) (finding sufficient connection between the uncharged drug and firearms offenses and

charged explosives offenses to warrant an upward departure from the Guidelines, given that the defendants "had a history of trading guns for drugs, and were all high on drugs the night they stole the explosives"); *United States v. Kim*, 896 F.2d 678, 685-86 (2d Cir. 1990) (finding that misconduct concerning smuggling aliens was sufficiently related to the offense of conviction, making false statements concerning the aliens, to serve as a basis for upward departure; but finding that counterfeit money misconduct could serve as a basis for upward departure only if the sentencing judge determined by a preponderance of the evidence, on remand, that possession of the money and importation of it was knowing).

### C. Application to the Instant Case

As discussed above, judicial fact-finding at sentencing is broadly permissible in the Sixth Circuit and elsewhere. However, courts rarely take into account facts that are unrelated to the offense of conviction. The relatedness principle is firmly rooted in the SRA and the Sentencing Guidelines, as well as Fifth and Sixth Amendments to the Constitution. The logic underpinning this limitation on judicial fact-finding at sentencing is sound and inescapable: Allowing sentence enhancements based on unrelated conduct would enable the Government to obtain punishment for any number of unrelated crimes, based upon a bench trial rather than a jury trial. It would thus allow the Government to strip defendants of their Sixth Amendment right to a jury trial, as well as punish defendants for the same crime in separate proceedings, in violation of the Double Jeopardy Clause.

The Court denies the Government's request to enhance Defendant Chandler's sentence by cross-referencing to the first-degree murder Guideline for Defendant's alleged role in the murder of Dynasty Myles. This murder is unrelated to the crime Defendant pled

guilty to, namely, conspiracy to distribute cocaine. Nowhere in the indictment or plea agreement is there any reference to Dynasty Myles or her murder. Nor has the Government subsequently argued that Dynasty Myles or her death were in any way connected to Defendant's offense of conviction (other than an oblique reference to the violent nature of the drug trafficking industry, and to money stolen from Defendant by two men prior to the murder, which may or may not have been drug proceeds).

According to the plea agreement, the factual basis for the conspiracy to distribute cocaine conviction is as follows.

> From at least as early as 2012 until January 2015, Chandler agreed with others to obtain and sell controlled substances, including cocaine, and the total amount of cocaine exceeded 500 grams. For example, in January 2015, Chandler directed co-defendant Cornelius Patton and Charles Brown to travel from Detroit to Arizona to obtain cocaine and heroin. Patton and Brown did travel and pick up the drugs and brought them back to Michigan, but were traffic stopped by law enforcement officers, who found and seized the drugs (namely two kilograms or, more precisely, 1,968 grams of a mixture or substance containing a detectable amount of cocaine).

(Dkt. # 121 at 4). There is no indication that the conspiracy to distribute cocaine and the murder involved the same course of conduct, occurred during the same single episode or spree, or involved a series of similar offenses. There is no indication that the conspiracy to distribute cocaine and the murder involved common victims, common accomplices, a common purpose, or a similar modus operandi. The Government has not shown that the murder is the same type of conduct or part of the same scheme or plan as the conspiracy to distribute cocaine, or that the murder occurred in preparation for or in the course of avoiding responsibility for the conspiracy to distribute cocaine. The Government has not

14

shown that the murder was within the scope of the jointly undertaken distribution of cocaine, in furtherance of the distribution of cocaine, or reasonably foreseeable in connection with the distribution of cocaine. Although the murder and the conspiracy to distribute cocaine occurred during the same time frame, there is seemingly no other connection between them. The Court concludes that the murder does not contextualize or speak to the severity of the conspiracy to distribute cocaine, Defendant's offense of conviction.

The Government asserts that, even if the Court does not apply the cross-reference to the first-degree murder Guideline, the Court should consider Defendant's alleged involvement in Myles's murder as it relates to the Defendant's history and characteristics. Under the Guidelines, the history and characteristics of a defendant are determined in large part based on his criminal history. *See* U.S.S.G. § 4A. Prior acts not related to the offense of conviction could result in additional criminal history points that are assigned only on the basis of prior convictions by jury or pleas. *See id.* § 4A1.1, 1.2. Prior *similar* adult criminal conduct not resulting in a criminal conviction could also form the basis for a departure based on the inadequacy of the criminal history category. *See id.* § 4A1.3. Even then, however, such similar criminal conduct would be considered as increasing a defendant's criminal history score, not his offense level. *See id.* § 4A1.3(a)(4).

Additionally, a court could depart from the applicable Guideline range based on offender characteristics of a kind not adequately taken into consideration in determining that range. *See id.* § 5K2.0. However, if such a departure is based on prior acts of

15

misconduct, those acts must relate meaningfully to the offense of conviction. *See Cross*, 121 F.3d at 240 ("[W]ith respect to acts of misconduct not resulting in conviction, the Sentencing Commission intended to preclude departures for acts bearing no relationship to the offense of conviction, but to permit departure for acts that relate in some way to the offense of conviction, even though not technically covered by the definition of relevant conduct.") (quoting *Kim*, 896 F.2d at 684) (internal quotations omitted).

Finally, post *Booker*, courts can exercise discretion to vary upward based on their own evaluation of a defendant's likelihood of recidivism or reform, the need for deterrence, dangerousness to the community, etc. However, courts of appeal have regarded extreme variances of that nature as unreasonable where the district courts gave undue weight to such factors, abandoning consideration of the advisory Guidelines. *See Allen*, 488 F.3d at 1258-59, 1262 (collecting cases and noting that the purpose of *Booker* "was to bring our sentencing system closer to the norms of the Sixth Amendment").

In this case, Defendant Chandler has not been convicted of murdering Dynasty Myles, and the murder cannot constitute prior misconduct that is similar to the offense of conviction, conspiracy to distribute cocaine. Accordingly, Section 4A of the Guidelines is inapplicable. Similarly, Section 5K2.0 of the Guidelines is inapplicable because, as discussed above, the murder does not meaningfully relate to the conspiracy to distribute cocaine. Lastly, the Court declines to exercise *Booker* discretion to vary upward in such an extreme manner in this case.

In short, this case appears to be a classic example of why the relatedness principle must be enforced. The evidence that Defendant is guilty of first-degree murder rests in part on a polygraph result which would be inadmissible in a jury trial, and in part on cell tower / cell site location data that is far from definitive.[4] A shortage of evidence may be a reason why Defendant has not yet been charged with Dynasty Myles's murder. The Government may not overcome any shortage of evidence, or otherwise take a short cut that bypasses a jury and the "beyond a reasonable doubt" standard, by attempting to punish Defendant for first-degree murder in the context of sentencing for an unrelated drug conviction. Whether Defendant Chandler murdered Dynasty Myles is a question for a jury, and not one to be decided by this Court at a sentencing hearing. The Government, federal or state, is of course free to bring such a prosecution.

## III.  CONCLUSION

The Court DENIES the Government's request to enhance Defendant Chandler's sentence by cross-reference to the first-degree murder Guideline because the murder

---

[4] For example, Special Agent Stan Brue and defense expert Michael O'Kelly testified regarding the "amoeba" phenomenon at the sentencing hearing. While the cones depicted in the Government's exhibits (purporting to show the locations of Defendant's cell phone and Myles's cell phone) represent the coverage area that the phone companies intended would be covered by the corresponding cell towers / sectors, each cell tower / sector covered other areas outside of the cone as well. The Court also notes that the Supreme Court is currently considering the constitutionality of the warrantless seizure and search of historical cell site location data revealing the location and movements of a cell phone user. *See Docket for Carpenter v. United States*, Supreme Court of the United States, https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/16-402.html (last visited Jan. 29, 2018).

of Dynasty Myles is not sufficiently related to the conspiracy to distribute cocaine that Defendant pled guilty to.

    SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: January 30, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 30, 2018, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager